*In re* MARRIAGE OF RICKY WAYNE JACKSON, SR., Petitioner-Appellee, and TERRI TERESSA JACKSON, Respondent-Appellant.

Fourth District No. 4—93—0656

Argued January 19, 1994.—Opinion filed March 29, 1994.

COOK, J., specially concurring.

Valerie McWilliams and John J. Ammann (argued), both of Land of Lincoln Legal Assistance Foundation, Inc., of Champaign, for appellant.

Frederic M. Grosser (argued), of Grosser & Hays, of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In September 1991, the trial court entered a default judgment dissolving the marriage of the parties, respondent, Terri Teressa Jackson, and petitioner, Ricky Wayne Jackson, Sr. In October 1991, respondent filed a motion to vacate the judgment of dissolution as to all issues except grounds. In April 1993, respondent asked that the motion be called for a June 1993 hearing. After that hearing, the trial court struck the motion under local circuit rules as untimely presented for hearing. Respondent appeals, and we affirm.

## I. BACKGROUND

The parties married in March 1974. On March 16, 1990, petitioner filed a petition for dissolution of marriage seeking division of the marital property and joint custody of their three minor children born of the marriage. At the time he filed the petition, the marital home was located in Champaign, Illinois, but respondent also had a residence in Chicago where she was going to school. A few days after he filed the petition in Champaign County, Illinois, petitioner and the eldest child moved to Lake County, Illinois, and the two youngest children apparently joined respondent at her residence in Chicago.

Respondent was not served with summons until December 6, 1990, due in part to petitioner's pattern of ambivalence on whether to proceed with the dissolution, as well as an initial failure of service of process. Within 30 days of receipt of summons, petitioner visited respondent and suggested that they discuss reconciliation. Petitioner told respondent that if she would consider reconciliation, he would not proceed with the dissolution. Two months later, petitioner suggested that the marriage could not be reconciled with the parties living in separate residences, and they agreed that after respondent finished school in May 1991, they would move back together.

In May 1991, the parties and their three children moved to a new residence in Waukegan, Illinois. The parties' marital difficulties continued, and petitioner told respondent within a week after cohabitation resumed that he intended to proceed with the dissolution. However, they continued the marital relationship in all respects.

Around September 6, 1991, petitioner left the marital residence, stating that he was leaving town for a few days. He did not tell respondent that he planned to attend a hearing on the petition for dissolution of their marriage scheduled in Champaign County for that date. At that *ex parte* hearing, petitioner testified that the parties were still living together and, although respondent was unaware a hearing was scheduled, she had seen a copy of a proposed judgment of dissolution. According to petitioner, respondent expressed disagreement only with a later-deleted provision for child support, although he acknowledged that they did not specifically discuss debt and property allocation. He stated that respondent was employed at Wal-Mart earning $8 per hour, although respondent later claimed she was unemployed at the time, having worked at Wal-Mart only one day. Petitioner testified that he was earning $53,900 per year.

The court entered a judgment of dissolution and a joint-parenting order that granted petitioner residential custody of the children during the school year and granted respondent custody during

summer vacation. Both parties received alternate weekend visitation when the other parent had residential custody. The court ordered the parties to consult and agree on decisions regarding the children's medical, religious, and educational needs. They were also ordered to meet, discuss, and resolve any problems involving the joint-parenting order.

The court divided the personal property and debts between the parties. The court awarded three vehicles to respondent, two of which the parties no longer owned. She also was allotted marital debts of approximately $14,000, including $7,000 owed on the 1988 Mercury Sable automobile she had been awarded, which was repossessed the following month for failure to make payments. The court awarded petitioner a 1985 Buick Century automobile and allocated debts to him of approximately $18,000. Each party was awarded any life insurance policies, bank or savings accounts, and pension benefits standing in his or her own name. The court denied maintenance to both parties and did not enter an order for child support.

When petitioner returned to Waukegan following the hearing, he handed respondent a copy of the judgment. According to petitioner, he told respondent that she did not have to leave the marital residence, but respondent told him that she would not live with a man to whom she was not married and moved out two weeks later. According to respondent, petitioner ordered her to leave.

In October 1991, respondent, now represented by counsel, filed a motion to vacate the default judgment and a response to the petition for dissolution. However, the motion was not set for hearing until April 1993, 18 months later. At that point, petitioner had remarried, and respondent was employed as a social worker with the Head Start program in Chicago. At the hearing held in June 1993, respondent argued that the court should grant her motion to vacate because she was denied substantial justice as a result of the default judgment. Respondent offered no excuse for the 18-month delay in setting this motion for hearing. Petitioner argued that the circuit court rules allowed the trial court to consider any motion withdrawn if it had not been set for hearing within 90 days from the date of filing. (See 6th Jud. Cir. R. 2.1(j) (eff. June 1, 1983).) He also argued the unfairness of requiring him to litigate custody provisions more than 18 months after the children had been residing with him.

The court struck the motion to vacate as not timely presented for hearing. The court also held that, even if considered timely presented, the motion would not serve the ends of substantial justice between the parties, considering the interests of the minor children.

## II. ANALYSIS

■ Under section 2—1301(e) of the Code of Civil Procedure, a party may move to vacate a default judgment within 30 days of its entry. (735 ILCS 5/2—1301(e) (West 1992).) When reviewing a motion to vacate a default judgment, the overriding considerations are whether substantial justice is being done and whether, under the circumstances, compelling the other party to proceed to trial on the merits would be reasonable. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 406, 270 N.E.2d 841, 843.) The decision to grant a section 2—1301(e) motion to vacate lies within the sound discretion of the trial court. *In re Marriage of Romashko* (1991), 212 Ill. App. 3d 1018, 1024, 571 N.E.2d 995, 999.

■ In this case, if respondent's motion to vacate had been called for hearing in a timely fashion, we have little doubt that this court would have reversed any denial of that motion. The trial court's dissolution judgment was inappropriate for several reasons, not the least of which was that petitioner intended to keep respondent unprepared to contest the issues raised by the dissolution petition and to deny respondent her day in court. Section 405 of the Illinois Marriage and Dissolution of Marriage Act (Act) states the following:

"[I]n no case of default shall the court grant a dissolution of marriage *** unless the judge is satisfied that all proper means have been taken to notify the respondent of the pendency of the suit. Whenever the judge is satisfied that the interests of the respondent require it, the court may order such additional notice as may be required." (750 ILCS 5/405 (West 1992).)

Because the trial court was informed that the parties were living together and respondent was unaware the petition had been set for hearing, the court should have required notice to respondent.

■ However, we have a much greater concern about the court's entry of the joint-parenting order. No joint-parenting agreement was submitted by the parties as required by section 602.1 of the Act (750 ILCS 5/602.1 (West 1992)). Moreover, in respondent's absence, the court could not assess the ability of the parents to cooperate in implementing the order, nor could the court determine whether the best interests of the children would be served by entry of a joint-custody order—a determination *required* by section 602 of the Act (750 ILCS 5/602 (West 1992)). We have frequently noted that only in rare instances can the parties cooperate to the extent required for joint custody to benefit the children of the marriage. (See *In re Marriage of Oros* (1994), 256 Ill. App. 3d 167, 169-70; *In re Marriage of Bush* (1989), 191 Ill. App. 3d 249, 263, 547 N.E.2d 590, 598; *In re Marriage of Drummond* (1987), 156 Ill. App. 3d 672, 679-80, 509 N.E.2d 707, 712-13.) In no instance should the court enter a joint-

custody order when the respondent is in default. Nonetheless, a joint custody order was entered here, and we note that the record—fortunately—contains no indication the children have suffered by this custody arrangement. If evidence exists that changed circumstances have occurred, either party can move for a modification of custody pursuant to section 610 of the Act (750 ILCS 5/610 (West 1992)).

Although respondent could have obtained relief from the default judgment had she diligently pursued a hearing on her motion to vacate, she sat on her rights for 18 months before filing a notice of hearing. As petitioner points out, local court rules place the burden on the movant for obtaining a hearing date and allow the trial court to deem any motion withdrawn if it is not called for hearing within 90 days of the date filed. (See 6th Jud. Cir. R. 2.1(j) (eff. June 1, 1983).) Respondent's motion was not called for hearing until almost 600 days had passed.

Circuit courts possess inherent authority to enact and enforce rules regulating their calendars and dockets as long as those rules do not conflict with statutes or supreme court rules. (*People ex rel. Brazen v. Finley* (1988), 119 Ill. 2d 485, 491, 519 N.E.2d 898, 901; see 735 ILCS 5/1—104 (West 1992).) A reviewing court will not interfere with the trial court's exercise of its authority under the local rules in the absence of facts constituting an abuse of discretion. *Salazar v. Wiley Sanders Trucking Co.* (1991), 216 Ill. App. 3d 863, 869-70, 576 N.E.2d 552, 556 (plaintiffs failed to exercise due diligence when motion to vacate an order of dismissal of the case had not been called for hearing for 18 months).

■ Local rules are not mere "technicalities" designed to ensnare unwary litigants; instead, they constitute important safeguards for the efficient administration of justice. The burgeoning caseloads experienced by many circuits require local court rules to ensure the orderly progression of litigation, leading to an efficient and expeditious resolution of disputes. We commend the sixth circuit for promulgating such rules and the trial court for implementing them. Respondent simply waited too long to pursue relief and offered no satisfactory explanation for her delay nor any reason why the trial court erred in enforcing the rule against her. Trial courts must not allow the losing party to file a motion to vacate, let it languish, and then, when the losing party is in better circumstances, use that motion as a vehicle to contest the original issues before the court. Although we find rewarding petitioner's chicanery distasteful, we conclude that respondent sat on her rights. Thus, we find no abuse of discretion in the trial court's striking the motion to vacate.

## III. CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Champaign County.

Affirmed.

KNECHT, J., concurs.

JUSTICE COOK, specially concurring:

Section 405 does not require the court to give notice of the default hearing. Section 405 does require the court to satisfy itself that all proper means have been taken to notify respondent of "the pendency of the suit." (750 ILCS 5/405 (West 1992); see *In re Marriage of Sheber* (1984), 121 Ill. App. 3d 328, 337, 459 N.E.2d 1056, 1063; *In re Marriage of Kopec* (1982), 106 Ill. App. 3d 1060, 1064, 436 N.E.2d 684, 687.) A party served with summons, as respondent was here, will have notice of the pendency of the suit. Section 405 accordingly has its greatest effect in cases terminating the status of marriage ("*in rem* cases") which are commenced by service by publication. Neither the court nor the petitioner is required to give notice of a hearing to a party who has not filed an answer or appearance. " '[O]nce a court acquires jurisdiction, it is the duty of the litigants to follow the [progress of their own] case.' " (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 227, 499 N.E.2d 1381, 1389, quoting *Esczuk v. Chicago Transit Authority* (1968), 39 Ill. 2d 464, 467, 236 N.E.2d 719, 721.) I agree with the majority, however, that more than a failure to comply with section 405 was involved here, and that respondent could have obtained relief from the default judgment had she diligently pursued a hearing on her motion to vacate.