NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 240789-U

NO. 4-24-0789

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 18, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| JASON E. COHEE, | ) | No. 22CC59 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Katherine S. Gorman, |
| | ) | Judge Presiding. |

JUSTICE DOHERTY delivered the judgment of the court.
Presiding Justice Harris and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court correctly denied the request for a certificate of innocence and the petition for relief from judgment.

¶ 2    The case being appealed (Peoria County case No. 22-CC-59) was a prosecution for criminal contempt arising out of conduct in a civil case (Peoria County case No. 22-MX-007). Jason E. Cohee was the defendant in the former and the plaintiff in the latter. Further confusing things, Cohee brought a petition for a certificate of innocence and a motion to vacate an administrative order from the chief judge within the confines of the contempt case. Because he is at once a plaintiff, a defendant, and a petitioner, we refer to him here simply as "Cohee."

¶ 3    Cohee appeals the circuit court's order denying his petition for a certificate of innocence and his challenge to an administrative order controlling the manner in which he conducts himself in litigation in the Peoria County circuit court. For the reasons that follow, we

affirm.

¶ 4                                    I. BACKGROUND

¶ 5          Cohee sued the Peoria County State's Attorney's Office in Peoria County case No. 22-MX-007. On September 1, 2022, Cohee sent an expletive-filled e-mail to the presiding judge, Honorable Michael D. Risinger, following the cancellation of a case management conference in that matter. On September 21, 2022, Cohee appeared before the circuit court, and the e-mail was not mentioned. However, during the hearing, Cohee referred to the judge as a "smart ass," resulting in a finding of direct criminal contempt and imprisonment.

¶ 6          When Cohee again appeared in front of the circuit court in person in October 2022, the court mentioned that it was the last day of Cohee's imprisonment on the previous contempt finding. However, the court then initiated a summary contempt hearing concerning the September 1, 2022, e-mail, portions of which the court read aloud and questioned Cohee about. An excerpt from the e-mail reads as follows: "I'm extremely Frustrated at Getting F*** AROUND, ok, RISINGER, you have no idea what I am talking about, but Yet YOU, alone Ran it up my ASS as Hard and Far as any F*** in a Black Robe ever has." The message has further denigrating comments and expletives directed toward Judge Risinger. Cohee acknowledged authoring the e-mail, and the court ultimately found him guilty of direct criminal contempt and sentenced him to an immediate 120 days' imprisonment, with day-for-day credit.

¶ 7          In Cohee's direct appeal from the finding of direct criminal contempt, we reversed the circuit court's judgment and vacated the conviction because of the summary procedure employed. See *People v. Cohee*, No. 4-22-0980 (2024) (unpublished summary order under Illinois Supreme Court Rule 23(c)). We did not reach the merits of the circuit court's contempt finding.

¶ 8          On January 17, 2024, Cohee sought a certificate of actual innocence pursuant to

- 2 -

section 2-702 of the Code of Civil Procedure (Code) (735 ILCS 5/2-702 (West 2022)) in the contempt case. He alleged that he had been convicted of felony perjury and that, even if the charge was not a felony, the circuit court should still grant him a certificate of innocence. The State filed a response, stating Cohee was not statutorily entitled to a certificate of innocence because neither his contempt conviction nor the jail sentence imposed for it related to the commission of a felony.

¶ 9        Cohee also filed a motion pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)) (more properly referred to as a petition), asking the circuit court to strike and vacate the chief judge's administrative order restricting the manner in which he filed documents and participated in court cases. The one-page administrative order entered by Chief Judge Katherine S. Gorman on February 2, 2023, recites that Cohee had "been inappropriately corresponding via email with the State's Attorney's Office, the Chief Judge, Circuit Clerk's Office and various other court personnel concerning pending matters," and that such communications had constituted "abuse," "harassment," and "a burden on various court offices." *In re Jason Cohee*, Peoria County Cir. Ct. Adm. Order No. 2023-02 (Feb. 2, 2023). To remedy the situation, the chief judge ordered that (1) Cohee file documents with the circuit clerk via United States mail, (2) e-mail communications from Cohee would not be considered filings, nor would they constitute notice to the other party in the litigation, (3) Cohee cease sending e-mails to court personnel, and (4) due to "repeated posting of court proceedings on social media," Cohee was required to appear in person, as opposed to appearing remotely, for future court dates.

¶ 10        Cohee previously appealed this administrative order, and we dismissed the appeal for lack of jurisdiction. See *In re Peoria County Administrative Order 2023-02*, 2023 IL App (4th) 230125-U. We found that the administrative order was not amenable to review absent a final or appealable order in a case where Cohee was actually constrained by the administrative order.

*Id.* ¶ 11. His section 2-1401 petition in this case alleged in two different counts abuse of process and malicious prosecution by the presiding judge and another count of deceit and fraudulent misrepresentation against the county prosecutor. The relief sought was articulated as (1) that the administrative order be stricken and vacated, (2) the presiding judge be referred to the "Illinois Courts Commission for Disciplinary Action," (3) the county state's attorney be ordered to step down, and (4) compensation for his experiences with the justice system in these matters and "Bonus compensation for Not yet going POSTAL!" The State did not respond to the petition.

¶ 11 At the hearing in the instant matter, Cohee sought and was allowed to file a reply to the State's response in opposition to the petition for a certificate of innocence. The crux of his reply was that although he may not have been able to meet the requirements of the statute governing certificates of innocence, denying him the relief he sought would be an absurd result where the legislative intent of the scheme was to allow those "wrongfully incarcerated to obtain relief against the State for wrongful incarcerations."

¶ 12 The State stood on its pleading, and Cohee briefly reiterated the arguments in his pleadings. The circuit court attempted to conclude the hearing when Cohee mentioned that his petition to strike and vacate the administrative order was also pending. The court stated that it did not believe the latter matter was appropriately before the court but would nonetheless take his petition and arguments under advisement.

¶ 13 In a subsequent written order, the circuit court denied Cohee's request for a certificate of actual innocence. The court found that he could not meet any of the criteria set forth in the applicable statutory scheme and adopted the arguments advanced by the State. The court further found that the relief requested in Cohee's petition directed toward the administrative order was not properly raised. Even if it were, the court took judicial notice of the "voluminous" cases

and filings from Cohee and noted Illinois Supreme Court Rule 21(e) (eff. Jan. 1, 2023) authorized chief judges to enter orders " 'to restrain litigants from maintaining vexatious litigation' " (quoting *People v. Austin*, 2014 IL App (4th) 140408 ¶ 24).

¶ 14　　　　　This appeal followed.

¶ 15　　　　　　　　　　　　II. ANALYSIS

¶ 16　　　　　On appeal, Cohee argues that the circuit court erred in denying his petition for a certificate of innocence and his petition for relief from judgment directed against the chief judge's administrative order.

¶ 17　　　　　　　　　　　A. Certificate of Innocence

¶ 18　　　　　There are four statutory requirements a petitioner must satisfy to obtain a certificate of innocence:

> "(1) the petitioner was convicted of one or more felonies, sentenced to prison, and served all or part of the sentence; (2) the judgment of conviction was reversed or vacated, and the indictment or information was dismissed; (3) defendant is innocent of the charged offenses; 'and (4) the petitioner did not by his or her own conduct voluntarily cause or bring about his or her conviction.' " *People v. Washington*, 2023 IL 127952, ¶ 50 (quoting 735 ILCS 5/2-702(g)(1)-(4) (West 2016)).

¶ 19　　　　　The goal of the statute "is to provide a certificate of innocence to petitioners who are innocent of the crimes for which they were convicted" and " 'to benefit "men and women that have been falsely incarcerated through no fault of their own." ' " *Id.* ¶ 43 (quoting *People v. Dumas*, 2013 IL App (2d) 120561, ¶ 19, quoting 95th Ill. Gen. Assem., House Proceedings, May 18, 2007, at 12 (statements of Representative Flowers)). A petitioner bears the burden of proving the statutory requirements by a preponderance of the evidence. *Id.* ¶ 50.

¶ 20    The standard of review governing a circuit court's judgment on a certificate of innocence appears to remain an open question. In *Washington*, the court noted that there was an intradistrict split in the First District on whether to apply an abuse of discretion or a manifest weight of the evidence standard. *Id.* ¶ 47. The court, however, declined to resolve the issue because it was not addressed by the parties and because regardless of the standard employed, the result would be the same. *Id.* While the Fourth District has commonly reviewed the grant of a certificate of innocence for an abuse of discretion (see *People v. Brown*, 2022 IL App (4th) 220171, ¶ 11), Cohee argues for a *de novo* standard. We note that, outside of issues of statutory construction, there is no support for applying a *de novo* standard to our review of this matter. However, the resulting disposition would remain the same under any of the aforementioned modes of review.

¶ 21    Here, we conclude that the circuit court did not err in denying Cohee a certificate of innocence because, as the court below found, he cannot satisfy the required statutory criteria for relief. Cohee was not convicted of, nor was he incarcerated for, the commission of a felony. Rather, he was found to be in direct criminal contempt of court, a misdemeanor.

¶ 22    Additionally, more is required for a certificate of innocence than prevailing on the criminal charges; the petition must prove *innocence*. See *People v. Pollock*, 2014 IL App (3d) 120773, ¶ 35 (finding that an entitlement to a certificate of innocence does not automatically follow a finding that the defendant was not proven guilty beyond a reasonable doubt). Here, Cohee provided no evidence on which to conclude that he was innocent of the conduct that led to the contempt finding (a matter on which our prior decision did not have reason to comment). Far from showing his innocence, the record strongly suggests his guilt. Cohee referred to the presiding judge as a "F*** in a black robe," among other expletives, a fact which shows quite the opposite of innocence on the charge of contempt of court. See *People v. Hixson*, 2012 IL App (4th)

100777, ¶ 11 (" 'Criminal contempt of court has been generally defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute.' ") (quoting *People v. Javaras*, 51 Ill. 2d 296, 299 (1972)).

¶ 23        Cohee also challenges the constitutionality of the statutory scheme governing certificates of innocence, arguing that it is unconstitutional to place any burden of proof on him beyond reliance on our prior order. We note that statutes are presumed constitutional; to rebut that presumption, the party challenging a statute's constitutionality has the burden of establishing a clear constitutional violation. *People v. Bochenek*, 2021 IL 125889, ¶ 10. Moreover, a reviewing court is entitled to have the issues on appeal clearly defined and supported with cohesive arguments and pertinent authority. *Mikoff v. Unlimited Development, Inc.*, 2024 IL App (4th) 230513, ¶ 42. Cohee has failed his obligations in this regard, so we need not delve further into his constitutional argument.

¶ 24        Accordingly, the circuit court did not err in denying the request for a certificate of innocence.

¶ 25                        B. Administrative Order 2023-02

¶ 26        The second issue Cohee raises on appeal is the circuit court's denial of his section 2-1401 petition to vacate the administrative order entered by the chief judge. The order puts limits on how Cohee is to proceed in civil cases in the Tenth Circuit due to various prior acts of misbehavior on his part.

¶ 27        Illinois Supreme Court Rule 21(e) "authorizes the chief judge of a circuit court to 'enter general orders in the exercise of his or her general administrative authority.' " *U.S. Bank, N.A. v. Dzis*, 2011 IL App (1st) 102812, ¶ 20 (quoting Ill. S. Ct. R. 21(c) (eff. Dec.1, 2008))

(recodified as Ill. S. Ct. R. 21(e) (eff. Jan. 1, 2023)). "It is well established that circuit courts have inherent power to enact rules governing the practice and procedure of the business conducted before them." *People ex rel. Brazen v. Finley*, 119 Ill. 2d 485, 491 (1988). Although circuit courts cannot change substantive law or impose additional substantive burdens upon litigants (see *Kinsley v. Kinsley*, 388 Ill. 194, 197 (1944)), it is undeniable that courts have the authority to " 'make all such rules for the orderly disposition of business before them as may be deemed expedient' " and make "rules regulating their dockets, calendars, and business, so long as those rules do not conflict with statutes or supreme court rules." *In re L.S.*, 2022 IL App (1st) 210824, ¶ 110 (quoting 705 ILCS 35/28 (West 2020)). It is also " 'well settled that courts of this state may take measures to restrain litigants from maintaining vexatious litigation.' " *Peoria County Administrative Order 2023-02*, 2023 IL App (4th) 230125-U, ¶ 10 (quoting *Austin*, 2014 IL App (4th) 140408, ¶ 24).

¶ 28         We begin by rejecting the State's contention that this issue is barred by the doctrine of *res judicata* as a result of our dismissal of the prior appeal. "The doctrine of *res judicata* provides that a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and *** constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389 (2001). The State misunderstands the import of this court's prior ruling dismissing the appeal—without reaching the merits—because the administrative order was not directly appealable. Application of *res judicata* requires a prior final adjudication on the merits (*Wilson v. Edward Hospital*, 2012 IL 112898, ¶ 9), which is lacking here.

¶ 29         What can be learned from our earlier decision is that a chief judge's administrative order does not constitute a "case" from which an appeal can be taken. *Peoria County Administrative Order 2023-02*, 2023 IL App (4th) 230125-U, ¶ 11. If the order cannot be directly

appealed, its propriety similarly cannot be attacked via a section 2-1401 petition to vacate it as a "judgment," because it is not a "judgment." As we noted in our prior decision, it is possible that the validity of an administrative order might be challenged in the context of a case in which its provisions operate. *Id.* (citing *Dzis*, 2011 IL App (1st) 102812, ¶ 41) (a defendant appealing from a foreclosure judgment permitted to challenge a general administrative order)). Even then, however, the appeal would have to show how the administrative order impermissibly affected the litigant *in that case*.

¶ 30 Here, Cohee has made no attempt to show how the administrative order affected him in the context of the case in which he filed the section 2-1401 petition: the contempt case. Instead, Cohee's section 2-1401 petition is a naked attempt to do indirectly what he was not permitted to do directly: appeal from the merits of an administrative order. It was appropriate, then, for the circuit court to deny Cohee's petition.

¶ 31 While the foregoing is sufficient to reach affirmance in this case, we add only the following with respect to Cohee's argument that the administrative order represented an improper "time, place, and manner" restriction of his speech under the First Amendment (U.S. Const., amend. I).

¶ 32 "It is generally understood 'that the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired.' " *Austin*, 2019 IL 123910, ¶ 45 (quoting *Heffron v. International Society for Krishna Consciousness*, 452 U.S. 640, 647 (1981)). "A state may therefore impose reasonable restrictions on the time, place or manner of constitutionally protected speech occurring in a *public forum*." (Emphasis added.) *People v. Jones*, 188 Ill. 2d 352, 356 (1999). "A courthouse—and, especially, a courtroom—is a nonpublic forum." *Berner v. Delahanty*, 129 F.3d 20, 26 (1st Cir. 1997). There are a host of well-

established legal provisions—from the rules of evidence to provisions prohibiting frivolous or abusive claims—that legitimately restrict litigants' speech in court proceedings. We hope that all litigants understand their obligation to comply with such provisions.

¶ 33                                III. CONCLUSION

¶ 34          For the reasons stated, we affirm the circuit court's judgment.

¶ 35          Affirmed.